* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, modifies the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. At the time of the injury, giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between Plaintiff and Defendant-Employer.
3. Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer on June 29, 1998, for which Defendants have paid weekly compensation pursuant to a Form 60, from that date to the present.
4. The issues in the case are:
 a. Whether Plaintiff is entitled to reimbursement for a gas bill for the heated pool?
 b. Whether Plaintiff is entitled to an opinion from Dr. Lynn Johnson at the Greenville Pain Clinic?
 c. Whether Plaintiff is entitled to a second opinion by Dr. Michael Haglund at Duke University?
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing of this matter before the Deputy Commissioner, Plaintiff was 33 years of age and had received a B.S. degree in Nursing from Barton College. Plaintiff began working for Defendant-Employer in 1996. On June 29, 1998, Plaintiff was working as a home health care nurse for Defendant-Employer.
2. On June 29, 1998, Plaintiff suffered an admittedly compensable injury to her low back while working for Defendant-Employer when she had to catch a three hundred pound patient who was falling off the bed.
3. Plaintiff initially received treatment from Dr. Michael Sunderman, her primary care physician. Her first visit was June 30, 1998, the day following the accident. Plaintiff complained of a pull and snap in her low back after catching a patient. Dr. Sunderman initially diagnosed low back strain with mild sciatica. She was placed on bed rest. On July 6, 1998, Plaintiff complained of continued back pain. Dr. Sunderman recommended physical therapy at Matthews Rehabilitation Services. She remained out of work.
4. On July 15, 1998, Plaintiff called Dr. Sunderman with complaints of numbness and tingling in both legs. She stated the physical therapy was not helping. Dr. Sunderman referred her to Dr. John Gorecki of Duke University Medical Center.
5. Plaintiff had a visit with Dr. Gorecki on August 14, 1998. She complained of severe midline low back pain. Plaintiff also complained of numbness involving both lower extremities. A CT myelogram showed a broad based bulging disc at L5-S1.
6. Plaintiff had surgery on October 7, 1998, consisting of a two level fusion at L4-5 and L5-S1, with BAK cages and a bone graft. Plaintiff underwent an additional operation in October 2000, for the insertion of a dorsal column stimulator. The pulse generator for Plaintiff's spinal cord stimulator was replaced on August 27, 2001. On February 5, 2004, the pulse generator and extension wire were removed and a new radio frequency receiver with extension wires was implanted. Plaintiff underwent surgery on November 28, 2005, to remove the previous spinal cord stimulator and insert a new rechargeable one. On February 1, 2006, less than a month after the hearing before the Deputy Commissioner, Plaintiff returned to see Dr. Sunderman and reported improvement after insertion of the spinal cord stimulator.
7. During a visit with Dr. Gorecki on January 8, 1999, Plaintiff complained of severe, sharp pain localized to the mid lower back associated with intermittent numbness in the lower extremities. She returned on January 12, 1999, with better pain control due to use of the oral narcotic, Oxycodone.
8. Plaintiff returned to Dr. Gorecki on March 18, 1999. She stated she was walking regularly but had complaints of residual midline axial back pain and pain in the left calf. Dr. Gorecki recommended pool therapy and a gradual decrease of Oxycodone. The referral for pool therapy was part of an overall physical therapy program, which was also to work on her gait and endurance.
9. On March 30, 1999, Plaintiff had an outpatient physical therapy evaluation at Nash General Hospital. The therapist noted that Plaintiff would benefit from a community resource referral to the YMCA for pool therapy. As of August 2, 1999, Plaintiff was enrolled in an aquatic exercise class at the YMCA.
10. The majority of the YMCA pool therapy program consisted of stretching exercises designed to stretch the sciatic nerve and loosen the muscles in the lower extremities. Plaintiff testified she would use a water belt to lift herself off the bottom of the pool and would use weights to strengthen the upper body. According to Plaintiff, the water at the YMCA pool was very cold. Over a three-month period, Plaintiff attended sessions at the YMCA three days a week for an hour per day.
11. Plaintiff testified that after the first three months of aqua therapy at the YMCA, Defendant-Carrier stopped paying for the classes. Plaintiff and her husband then began to pay for the aqua therapy classes.
12. On August 3, 1999, Dr. Gorecki recommended that Plaintiff continue her current physical therapy and vocational rehabilitation. Dr. Gorecki wrote a note on that date, indicating Plaintiff should continue her current physical therapy for three months and that she begin aqua therapy for three months.
13. Dr. Gorecki's notes do not indicate that Plaintiff should receive water therapy from a pool heated to a certain temperature.
14. On October 7, 1999, Plaintiff returned to Dr. Gorecki with complaints of modest, dull, aching pain localized to the low back. The pain was made worse by activity. Dr. Gorecki assigned a 35% permanent partial impairment rating to her back and gave restrictions of no lifting from floor level, no lifting over ten pounds, and alternating between walking, sitting, and standing. Plaintiff returned to Dr. Gorecki on February 8, 2000, for follow up treatment due to back and leg pain. She had some questions about continuing aquatic therapy. Dr. Gorecki's medical note indicates aquatic therapy is appropriate and "would always be useful for her."
15. In October 2000, Plaintiff's father built an in-ground swimming pool with a see-through enclosure at his home. At the time the pool was built, Plaintiff did not live at her parents' home. She testified she would travel to her parents' home between three and five times a week to use the pool.
16. The pool varies in depth between three feet and five and a half feet and has several feet of concrete decking surrounding it in the enclosure. Several chairs are placed around the decking. The pool is heated by a gas heater and is used primarily by Plaintiff, with infrequent use by her husband and children. The pool is maintained at approximately 92 degrees, which, according to Plaintiff, makes it easier for her to perform her exercises to prevent stiffness.
17. Plaintiff uses a water belt to lift her off the bottom of the pool, which allows her to have a no-impact workout. Plaintiff performs workouts of between an hour and an hour and a half consisting of stretches, swimming, and exercises. She performs in the pool the same regimen she learned during aqua therapy at the YMCA.
18. Plaintiff testified that she is pain-free while performing exercises in the pool, and for approximately fifteen minutes after she gets out. After that, Plaintiff's pain gradually increases over the next few hours, returning to its normal level.
19. Plaintiff indicated that she gets more significant benefits from her home pool exercises over the YMCA aqua therapy. She testified that the cold temperature of the YMCA pool would cause her to have back spasms and she gets better pain relief when exercising in warm water. In addition, she testified that driving to the YMCA was difficult as driving increased her pain and that currently she seldom drives due to safety concerns about the effects of the medication she is taking.
20. In June 2003, Plaintiff and her husband bought her parents' home. Since that time she has tried to use the pool on a daily basis. She continues to use the same program of aqua therapy she learned at the YMCA. The pool is heated by gas contained in a 250-gallon tank. The cost of the gas varies greatly depending on the season. The cost of gas is higher during the winter months, especially January and February.
21. Plaintiff continued to be seen at Duke University Medical Center by Dr. Richard Osenbach and Dr. Sunderman, for management of her medications. On October 26, 2004, Plaintiff presented to Dr. Sunderman and requested that he order home pool therapy and also include a request for provision of "cleaning, maintenance, and supplies." Plaintiff told Dr. Sunderman on that date that her pain was relieved while she was in the pool.
22. During his deposition testimony, Dr. Sunderman indicated that the October 26, 2004 note for the home aqua therapy and cleaning, maintenance and supplies, was done at Plaintiff's request, although he concurred with the request following his conversation with Plaintiff.
23 On August 12, 2005, a physician's assistant at Triangle Spine and Back Care Center, Peter Gunn, saw Plaintiff. Mr. Gunn, acting under the direction of Dr. William Lestini of Triangle Spine and Back Care Center, performed an examination of Plaintiff, and noted that she had normal strength in all muscle groups. Plaintiff told Mr. Gunn that her pain had intensified over the previous years and had not been relieved with the many multiple treatments she had tried. Plaintiff told Mr. Gunn that she did not want to try any non-surgical treatment, as all of them had failed in the past. Mr. Gunn recommended that Plaintiff have a discogram to evaluate the disc levels above the site of her previous fusion to see if surgery was an option.
24Plaintiff underwent a discogram on September 22, 2005, performed by Dr. Gary Smoot with Carolina Spine Specialist. Dr. Smoot also noted that Plaintiff had normal muscle strength in all major muscle groups. The discogram and post discogram CT scan showed no evidence of an annular tear at any of the three disc levels above the site of the previous fusion. The discogram and subsequent CT scan also showed the BAK cages in place and the fusion solid.
25. Dr. Smoot could not find any anatomic reason to explain the nature or extent of Plaintiff's pain and found Plaintiff had normal muscle strength.
26. On October 13, 2005, Dr. Lestini saw Plaintiff in a follow-up visit. Dr. Lestini explained to Plaintiff that the discogram and post discogram CT scan showed no annual tears and no reason for surgery. Dr. Lestini also explained that the discogram was discordant in that it produced pain complaints when it should not have. Dr. Lestini also noted that Plaintiff's pain responses to injections at the L2-3 and L3-4 level were somewhat inconsistent. Dr. Lestini felt that Plaintiff might have pain coming from scar tissue, but was otherwise unable to identify the source of her pain.
27. Plaintiff filed a claim seeking reimbursement from Defendants for gas used in the heating of the pool on a Form 33 request for hearing on October 27, 2005.
28. Mr. Robert Marx, Plaintiff's father, testified concerning how the pool was constructed, how much it costs to operate and why he constructed it. He testified that he built the pool because Plaintiff complained about the distance she had to travel to the YMCA and that the cool temperature of the pool at the YMCA caused her back spasms. A twenty-five thousand BTU heater is hooked up to the filtration system. Electricity to run the pump costs about thirty-five dollars a month. The pool also requires between nine hundred to a thousand gallons of gas a year. The average annual cost of gas for the pool is eighteen hundred twenty-five dollars. The maximum cost of chemicals is two hundred fifty dollars a year. So the total cost of heating and maintaining the pool is approximately two thousand five hundred dollars a year, which amounts to approximately six dollars and eighty-five cents per day.
29. Based upon medical reports, expert medical testimony and Plaintiff's own testimony in this case, the Full Commission finds that the pool or aqua therapy Plaintiff receives at the YMCA or through the exercise program she performs in her home pool is a medical treatment or service which is reasonably required to either provide relief, effect a cure, and/or lessen Plaintiff's disability and she is entitled to have Defendants provide medical compensation for such therapy.
30. Plaintiff has failed to prove by the greater weight of the evidence that she is entitled to medical compensation for the gas, electricity and cleaning supplies she uses to heat and maintain her pool. Although being able to perform pool therapy at home in a heated pool is beneficial to Plaintiff, there is insufficient evidence from which to find that pool or aqua therapy at the YMCA is not also beneficial. Defendants are obligated to pay for pool or aqua therapy for Plaintiff. If Defendants elect to provide such therapy at the YMCA or at some other suitable facility away from Plaintiff's home, arrangements must be made immediately, including suitable transportation if Plaintiff is unable to drive herself and suitable therapy assistance for Plaintiff at the YMCA or other facility, for a minimum of five days per week.
31. Plaintiff testified, and the Full Commission finds, that she continues to have continuing, ongoing pain from her compensable back injury of June 29, 1998. Plaintiff is seeking authorization to receive an evaluation and follow-up treatment, if needed, from both Dr. Johnson of Greenville Pain Clinic and Dr. Michael Haglund of Duke University.
32. Plaintiff testified she has requested to see Dr. Johnson because he could provide the newest and latest pain management for failed back surgery syndrome and he could also order any tests to look for further problems. Plaintiff has not had a pain management specialist in several years.
33. Plaintiff's request to see Dr. Johnson of the Greenville Pain Clinic is reasonably related to Plaintiff's compensable injury and such an evaluation and treatment would tend to effect a cure, provide relief and/or lessen her disability caused by chronic pain resulting from her compensable back injury of June 29, 1998.
34. Plaintiff also requests authorization to see Dr. Haglund of Duke University for any surgical recommendations. Plaintiff actually saw Dr. Haglund in 2001. At that time he suggested a foraminotomy to decrease the amount of nerve pain.
35. Dr. Osenbach indicated that he would not refer Plaintiff to Dr. Haglund, as she is not a surgical candidate, in his opinion.
36. Plaintiff's request to see Dr. Haglund of Duke University is reasonably related to Plaintiff's compensable injury and is reasonably designed to either, effect a cure, provide relief and/or lessen her disability.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's participation in pool or aqua therapy is a medical service or treatment which is reasonably designed to provide relief, effect a cure, and/or lessen the period of Plaintiff's disability and Defendants are obligated to provide such therapy for a minimum of five days per week. N.C. Gen. Stat. § 97-25.
2. Plaintiff failed to prove by the greater weight of the evidence that she is entitled to medical compensation for the gas, electricity and supplies used to heat and maintain her pool at home, except for the limited purposes authorized herein. N.C. Gen. Stat. § 97-2(19).
3. Defendants are obligated to provide pool or aqua therapy for Plaintiff. Pool therapy through the YMCA or some other suitable facility, or through the exercise program Plaintiff follows at home would be beneficial and either would tend to effect a cure, provide relief and/or lessen her disability. Defendants shall make immediate arrangements to provide pool therapy for Plaintiff. Should Defendants elect to provide pool or aqua therapy through the YMCA or some other suitable facility away from Plaintiff's home, Defendants shall make immediate arrangements for such therapy for a minimum of five days per week, including transportation for Plaintiff if she is unable to drive herself and assistance from a suitable therapist. Defendants shall reimburse Plaintiff at the rate of six dollars and eighty-five cents per day for any day within the authorized weekly period that Plaintiff is required to use her at home pool for valid reasons given. N.C. Gen. Stat. §§ 97-25 and 97-2(19).
5. Plaintiff has proven by the greater weight of the evidence that an evaluation and follow-up treatment by Dr. Lynn Johnson are reasonably related to her compensable injury and would tend to either effect a cure, provide relief and/or lessen her disability. N.C. Gen. Stat. § 97-25.
6. Plaintiff has shown by the greater weight of the evidence that having an evaluation by Dr. Michael Haglund is reasonably related to her compensable injury and would tend to either effect a cure, provide relief and/or lessen her disability; however, no treatment is being authorized at this time. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for pool therapy is GRANTED. Plaintiff's request for medical compensation for gas, electricity and supplies used to heat and maintain her home pool is hereby DENIED, except for the limited purposes authorized herein.
2. Defendants shall within 10 days from the filing of this Opinion and Award make suitable arrangements to provide pool or aqua therapy to Plaintiff for a minimum of five days per week. Should Defendants elect to provide pool or aqua therapy through the YMCA or some other suitable facility away from Plaintiff's home, suitable arrangements shall also be made to provide transportation for Plaintiff if she is unable to drive herself and for therapist assistance to Plaintiff. Defendants shall also reimburse Plaintiff at the rate of six dollars and eighty-five cents per day for any day within the authorized weekly period that Plaintiff is required to use her home pool for therapy for valid reasons given. N.C. Gen. Stat. § 97-25.
3. Plaintiff's request for an evaluation and follow-up treatment from Dr. Johnson of Greenville Pain Clinic is hereby GRANTED.
4
4. Plaintiff's request for an evaluation from Dr. Haglund of Duke University is hereby GRANTED.
5. Defendants shall pay the costs.
This the ___ day of December 2006.
 S/______________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/______________________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/______________________________ BUCK LATTIMORE CHAIRMAN